**SPECIALTY RENTAL TOOLS & SUPPLY, INC., Plaintiff–Cross Appellant,**

v.

**BOYD'S BIT SERVICE, INC., Defendant–Appellant.**

No. 02–1530, 03–1066.

United States Court of Appeals, Federal Circuit.

Dec. 17, 2003.

Rehearing Denied Jan. 14, 2004.

Before NEWMAN, LOURIE, and CLEVENGER, Circuit Judges.

CLEVENGER, Circuit Judge.

Plaintiff–Cross Appellant Specialty Rental Tools & Supply, Inc. ("Specialty") sued Defendant–Appellant Boyd's Bit Service, Inc. ("Boyd's") for infringement of U.S. Patent No. 5,284,210 ("the '210 patent"). Boyd's counterclaimed for declaratory judgment that the '210 patent was invalid and not infringed. Boyd's additionally sought damages based on breach of a September 19, 1995, settlement agreement between Boyd's and Specialty concerning Boyd's U.S. Reissue Patent No. 33,150 ("the '150 reissue"), and damages for unfair competition.

On May 14, 2002, before trial, Boyd's moved for summary judgment that Specialty had breached the settlement agreement. On July 1, 2002, the district court denied Boyd's motion and on the same day, on its own motion, granted summary judgment on the settlement agreement allegations in favor of Specialty. Boyd's did not move for reconsideration. At trial, a jury found the '210 patent invalid and not infringed. Following trial, the district court denied Specialty's Rule 50 motion that the '210 patent was not invalid and infringed. The district court also denied Boyd's motion to declare the case exceptional.

Boyd's appeals the grant of summary judgment that Specialty did not breach the September 19, 1995, settlement agreement and the district court's refusal to find this case exceptional. Because the district court should have given Boyd's ten days notice before granting summary judgment, we *vacate and remand* that judgment. Because the district court's decision that this case is not exceptional is not clearly erroneous, we *affirm* that judgment.

Specialty cross appeals the denial of its motion for Judgment as a Matter of Law ("JMOL") that the '210 patent is not invalid and infringed. Because the jury was

presented substantial evidence that the '210 patent was anticipated or made obvious by the prior art, and because invalid claims cannot be infringed, we *affirm* the district court's denial of Specialty's motion for JMOL.

## I

In oil drilling operations, drill pipe connects the above ground drilling equipment to the bottomhole assembly, which includes the drill bit. In the course of drilling, drill pipe sometimes becomes stuck. Drill pipe may be restricted in vertical movement, rotational movement, or both. When drill pipe becomes stuck, time and money are lost. Increasing the speed and reducing the inconvenience of recovering stuck drill pipe therefore creates a competitive advantage. In the past, recovering pipe meant disconnecting the drill pipe from the power drive, and sending diagnostic tools down the drill pipe. This took a substantial amount of time. In addition, with the power drive disconnected, it could not be cooperatively used to free the pipe.

The claims of the '210 patent, entitled "Top Entry Sub Arrangement," that are the subject of the infringement action, and the '150 reissue, entitled "Borehole Drill Pipe Continuous Side Entry or Exit Apparatus and Method," that is the subject of the settlement agreement, are directed to devices (collectively termed "Entry subs") that improve the speed and convenience of recovering stuck drill pipe.

## A

Entry subs are devices used in the oil services industry that provide diagnostic and corrective tools access to the drill pipe. Entry subs are placed in between joints of drill pipe above the ground. In general appearance, entry subs look like a short piece of drill pipe having threading at each end that enable the subs to be incorporat-ed directly into the drill pipe. One notable exception, however, is that besides having the two threaded openings that permit incorporation into the drill pipe, entry subs have a third opening that permits access to the tubular body of the sub. Diagnostic and corrective tools may be inserted into the drill pipe through this third opening. In addition, wireline, which may be connected to a tool, can pass through this third opening. Wireline permits engineers and equipment on the surface to communicate with a tool in the drill pipe. Information from the tool can be used to determine the location of stuck pipe and inform the decision on corrective action. In addition, because the entry sub is incorporated into the drill pipe, the power drive can be used to assist in freeing the pipe.

In commercial practice, Boyd's entry subs are called "side entry subs" while Specialty calls their entry subs "top entry subs." Specialty asserts that their top entry subs are superior to Boyd's side entry subs because a greater variety of tools can be inserted directly into the drill pipe through the third opening in the top entry sub than through the third opening in the side entry sub. This is true, Specialty asserts, because the angle of entry through the third opening in the top entry sub is less than that of the side entry sub.

Finally, when tools are suspended on wireline through an entry sub the wireline rubs on the interior of the sub. This would eventually wear out the entry sub so that a new sub would have to be machined. A "saver sub" may be attached to an entry sub to assume wireline wear thereby protecting the entry sub from damage. Saver subs are short, relatively inexpensive pieces of pipe that can be threaded on to the threaded ends of more expensive drilling equipment. In addition to assuming wireline wear, saver subs also serve the general function of preserving the thread-

ed ends of the more expensive equipment by assuming much of the physical wear that occurs when the equipment to which the saver subs are connected is threaded on and off other pieces of pipe.

## B

The reissue date of the '150 reissue is January 23, 1990. Specialty's '210 patent directed to top entry subs issued February 8, 1994. In 1995, Boyd's learned that Specialty was manufacturing and marketing a "top entry sub." After Boyd's informed Specialty that its top entry sub was infringing the '150 reissue, Specialty sued Boyd's seeking declaratory judgment of noninfringement. Boyd's counterclaimed for infringement.

On September 19, 1995, the parties settled the case. The terms of the settlement agreement allowed Specialty to continue making and selling the top entry sub on several conditions. In paragraph 2 of the agreement, Specialty agreed not to make changes to the top entry sub design; agreed that its top entry sub will contain a male thread at the bottom of the main body portion; and agreed that any member threaded onto the male thread "will not perform the function of assuming a greater amount of wireline wear on such member between the wireline entry and the exit from the main body."

In paragraph 3 of the agreement, Specialty agreed to notify Boyd's of changes in its top entry sub design, and to "in no event" remove the male thread on the lower end of the main body of the top entry sub, or "make changes which result in a member being threaded thereon which assumes the wireline wear function as described in Paragraph 2 above."

In 1996, Boyd's developed a larger entry sub by, according to Boyd's, "elongat[ing]" a sub that it had been manufacturing and using since 1990 ("the fly out sub"), and called this new sub the "long boy sub."

In June of 1999, Specialty sued Boyd's claiming the long boy sub infringed its '210 patent. Around the same time, according to Boyd's, it discovered that Specialty was using saver subs with female threaded ends attached to their top entry subs that assumed a greater amount of wireline wear than the interior of the sub. Accordingly, Boyd's brought counterclaims for declaratory judgment of noninfringement and invalidity as well as claims for breach of the above-mentioned settlement agreement that resolved the earlier suit concerning the '150 reissue.

As noted above, the district court, *sua sponte*, entered summary judgment for Specialty concerning breach of the settlement agreement and denied Specialty's motion for JMOL challenging the jury's findings that claims 1 and 16 of the '210 patent are invalid and not infringed.

## II

We review the grant of summary judgment de novo, *see Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1575 (Fed.Cir.1994), as a general rule, applying the regional circuit's standard of review to procedural issues and our own standard of review to substantive patent issues. *See, e.g., Biodex Corp. v. Loredan Biomedical, Inc.*, 946 F.2d 850, 853 (Fed.Cir.1991). In the Fifth Circuit, it is procedural error for the court to fail to give ten days notice to a party against whom the court, on its own motion, grants summary judgment. *See Love v. Nat'l Med. Enters.*, 230 F.3d 765, 770–71 (5th Cir.2001). Failure to give the losing party ten days notice may be harmless where (1) the nonmovant has no additional evidence or (2) the appellate court finds the additional evidence does not create a genuine issue of material fact. *Id.* at 771. In addition, where the losing party moves

for reconsideration and fails to raise the procedural error, the appellate court reviews the procedural defect under a plain error standard of review. *Id.*

In this case, Boyd's challenges both the procedural aspect of the grant of summary judgment, *i.e.*, was it properly granted, *sua sponte*, against the moving party without ten days notice, as well as the merits of the grant, *i.e.*, whether the district court properly interpreted the settlement agreement.

Settlement agreements are contracts, and contract interpretation is typically a nonpatent issue governed by state law. *Am. Med. Sys. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1532–33 (Fed.Cir.1993). Under Texas law, a court interpreting a contract strives to give effect to the written expression of the parties' intent. *See, e.g., State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex.1995). "If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). When a written contract is ambiguous its interpretation presents questions of fact.

### A

Purporting to read all five paragraphs of the agreement as a whole, the court below concluded that "it is clear that the intent ... was to keep Specialty from manufacturing an entry sub with a female thread on its lower end to accommodate a saver sub with a male thread in its upper end which could accommodate a 'wear sleeve' to constrict the inner diameter of the interior longitudinal passage and thereby accept direct wireline wear...." Further, according to the Magistrate Judge:

The parties did not intend to preclude Specialty from using a saver sub with a

female thread on its upper end which, when replaced, might for a time assume a greater amount of wireline wear due to the incidental wireline wear to the wall of the interior longitudinal passage of the top entry sub over a long period of time. In fact, with its coaxial alignment, Specialty's top entry sub is designed to experience virtually no wireline wear except that which is inherent in its usage. In the last analysis, it seems that the main function of Specialty's saver sub is to protect the top entry sub from external damage during its installation and removal.

■ Reading the settlement agreement as a whole, we do not see the same unambiguous evidence of the parties' intent. In particular, two of the three substantive paragraphs of the five-paragraph agreement, are directed to the issue of the amount of wireline wear that is permissible on members threaded on to Specialty's top entry sub.

Paragraph 2.
[A]ny member threaded onto such male thread will not perform the function of assuming a greater amount of wireline wear on such member between the wireline entry and exit from the main body.

Paragraph 3.
Specialty agrees that ... it will not make changes which result in a member being threaded [on the male thread] which assumes the wireline wear function described in Paragraph 2 above.

At least facially, this language does support the conclusion that: "The parties did not intend to preclude Specialty from using a saver sub ... which, when replaced, might for a time assume a greater amount of wireline wear...." We further note that the agreement may be unclear as to whether paragraph 2 prohibits all threaded on members that take on a "greater

amount of wireline wear [than occurs] between the wireline entry and exit" or whether the location where the wireline wear is assumed must be "between the wireline entry and exit."

On appeal, Boyd's argues that the court must have considered extrinsic evidence to determine the intent of the parties.[1] Boyd's additionally contends that given the ten days required by law, they would have presented evidence that Specialty entered into the settlement agreement because they believed that a saver sub assuming greater wireline wear was not necessary due to the nature of the top entry sub.

 For its part, Specialty does not dispute that the district court granted, *sua sponte*, summary judgment against Boyd's without ten days notice. This was procedural error. *See Love*, 230 F.3d at 770–71. In response to Boyd's contention that there was harm, Specialty's briefs cited no cases and provided no argument in support of the proposition that the district court's error was harmless. Specialty's counsel conceded as much at argument. Because we conclude that Boyd's should have been permitted to present evidence concerning the intent of the parties to the September 19, 1995, settlement agreement, we vacate the grant of summary judgment that Specialty did not breach the settlement agreement and remand for further proceedings consistent with this opinion.

### B

Whether a case is exceptional is a question of fact that we review for clear error. *See Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1460 (Fed.Cir.1998). "A factual finding is 'clearly erroneous' when although there is evidence to support it, the

reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). A prevailing party may prove a case exceptional by showing inequitable conduct, litigation misconduct, willful infringement, or that the case was vexatious, frivolous, or otherwise brought in bad faith. *See, e.g., Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1034 (Fed.Cir.2002).

Boyd's arguments that this case is exceptional can be distilled into three. First, that the evidence justified a finding of inequitable conduct. Second, that given the course of business conduct between the parties Specialty brought the suit to pressure Boyd's into selling its business to Specialty. Finally, that the jury's invalidation of the asserted claims of the '210 patent confirms the frivolous nature of the lawsuit.

 We conclude that none of Boyd's arguments show that the district court clearly erred in finding the case not exceptional. Boyd's contention that the evidence justified a finding of inequitable conduct is seriously undercut by the jury's verdict, however advisory, that no inequitable conduct occurred in the prosecution of the '210 patent. Second, the district court found that this litigation precipitated from the failure of arms-length negotiations to achieve a business solution to a dispute. On these facts, we cannot agree that a course of events so commonly antecedent to litigation strongly supports a finding that this case is exceptional. Finally, the fact that Specialty lost the case, *i.e.*, the jury invalidated the asserted claims of the '210 patent, does not alone or in combi-

---

1. We note that the Helms affidavit, submitted in support of Specialty's response to Boyd's motion for summary judgment, makes repre-sentations concerning Specialty's intent that appear to be reflected in the lower court's opinion and order.

nation with the other facts on which Boyd's relies, make this case exceptional. In light of the district court's finding that Specialty had a good faith belief in its asserted claim construction and its reliance on the fact that the jury "absolved" Specialty of any alleged inequitable conduct, we hold that the district court's determination that this case is not exceptional was not clearly erroneous.

## III

This court reviews the grant or denial of JMOL by reapplying the district court's standard of review. *Tec Air, Inc. v. Denso Mfg. Mich. Inc.*, 192 F.3d 1353, 1357 (Fed. Cir.1999). Anticipation is a question of fact, and this court reviews the jury's finding only to determine if it is supported by substantial evidence. *Id.* The facts underlying an obviousness determination are reviewed for substantial evidence, while the ultimate conclusion of obviousness is a question of law. Thus, this court reviews the legal conclusion of obviousness de novo. *Id.* at 1359.

Prior art anticipates when it discloses and enables each and every element of the challenged claim. *See PPG Indus. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1566 (Fed.Cir.1996). Prior art that anticipates a claim renders the same claim obvious. *See Structural Rubber Prods. Co. v. Park Rubber Co.*, 749 F.2d 707, 716 (Fed. Cir.1984).

### A

Specialty challenges the denial of its motion for JMOL by arguing that there was not substantial evidence for the jury to find claims 1 and 16 anticipated and that Boyd's proofs of anticipation were flawed. For Specialty to prevail, it must prove that the evidence presented was not sufficient to support the conclusions necessarily drawn by the jury. *Tec Air*, 192 F.3d at 1357. In other words, it must prove that no reasonable jury could have reached the conclusion that was reached. *Id.* at 1358. The prerogatives of a reasonable jury include assessing credibility and weighing evidence. *See, e.g., Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1569 (Fed.Cir.1992). If Specialty presented evidence that might contradict or challenge the evidence presented by Boyd's, we assume that the jury considered that evidence in the course of reaching its verdict. *Id.*

▉ We have carefully reviewed the record and conclude that Boyd's presented substantial evidence to the jury, from which it could have concluded that the prior art, namely the '150 reissue and prior art subs made by Boyd's, anticipate claims 1 and 16 of the '210 patent. In finding Specialty's claims anticipated, the jury saw diagrams of prior art subs, the '150 reissue, and actual subs themselves. Moreover, in the context of this factual evidence, Boyd's attorney elicited element-by-element testimony from experts that both claims 1 and 16 read on Boyd's devices and patent. Accordingly, we affirm the jury verdict that claims 1 and 16 of the '210 patent are anticipated, and obvious.

### IV

In conclusion, we hold that the district court erred when it granted summary judgment against Boyd's without sufficient notice. We vacate that judgment and remand. We affirm the district court's decision that the case is not exceptional. We affirm the jury's finding of invalidity because it was based on substantial evidence. We affirm the jury's finding of no infringement because invalid claims cannot be infringed.