Jean SIMMONS, et al.,
Plaintiff-Appellants,

v.

Robert LYONS, Individually and as
Sheriff of Washington Parish,
Defendant-Appellee.

No. 84–3302.

United States Court of Appeals,
Fifth Circuit.

Nov. 12, 1984.

Richard A. Schwartz, Simpson & Schwartz, Amite, La., Ronald Penton, Bogalusa, La., for plaintiff-appellants.

Reuter & Reuter, Normand F. Pizza, New Orleans, La., for defendant-appellee.

Before RUBIN, RANDALL, and TATE, Circuit Judges.

TATE, Circuit Judge:

The plaintiffs, ten deputies or employees of a defeated sheriff, sue the successor sheriff for the latter's failure to re-appoint them when the new sheriff's term commenced. The plaintiffs' suit, grounded on 42 U.S.C. § 1983, alleges that, in violation of their First Amendment rights, they were denied re-appointment because of their political support of the predecessor sheriff. The two female plaintiffs additionally allege that they were denied equal employment opportunity because of gender discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

The plaintiffs suit was dismissed by summary judgment. They appeal, urging that disputed issues of material fact preclude summary judgment. Finding that, under the uncontradicted factual showing and *McBee v. Jim Hogg County, Texas,* 730 F.2d 1009 (5th Cir.1984), the new sheriff's failure to reappoint the plaintiffs was not founded on their political activities or expression, we affirm the dismissal of the § 1983 civil rights suit. However, finding that disputed issues of sexual harassment preclude summary judgment as to the Title VII claim of the two female plaintiffs, we reverse and remand as to this claim.

The skeletal facts revealed by the pleadings and factual showings are these: The ten plaintiffs had been appointed or employed by the (then) incumbent Washington Parish Sheriff Willie J. Blair, and they actively supported him in his unsuccessful campaign for re-election ending in late 1979. Sheriff Blair was defeated by Robert Lyons, the defendant in this action. When Sheriff Lyons took office on June 1,

1980, he did not re-appoint any of the ten plaintiffs to his staff.

### (1) *The § 1983 Action*

The plaintiffs contend that Lyons' failure to reappoint them was based upon their exercise of their First and Fourteenth Amendment rights, in that the failure to do so was based upon their political support and expression of their beliefs in favor of Lyons' electoral opponent, the defeated sheriff. On the basis of affidavits submitted both by them and by Lyons, and of certain documentary exhibits (employment applications) produced by Lyons in response to a request therefor, the district court granted the defendant Lyons' motion for summary judgment and dismissed the plaintiffs' § 1983 action.

■ A grant of summary judgment is appropriate only where it appears from the pleadings, depositions, admission, answers to interrogatories, and affidavits—considered in the light most favorable to the opposing party—that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Williams v. Shell Oil Company*, 677 F.2d 506, 509 (5th Cir.), *cert. denied*, 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 933 (1982), *quoting*, Fed.R. Civ.P. 56(c). Any doubt as to the existence of a material fact is to be resolved against the moving party. *Id.; Murphy v. Georgia-Pacific Corporation*, 628 F.2d 862, 866 (5th Cir.1980).

We agree with the district court that the defendant Lyons met this heavy burden upon a movant for summary judgment and that, therefore, the plaintiffs' § 1983 action was properly dismissed.

In support of his motion for summary judgment, the defendant Lyons averred by his two affidavits:

When he took office on July 1, 1980, none of the plaintiffs was employed by the sheriff's office.[1] He considered for employment only those persons who submitted applications for employment, and he made his appointments on the basis of review of those applications. Eight of the plaintiffs had never applied or even contacted Lyons for appointment, and none of them were told by Lyons that he would not hire them and that they should not submit an application, nor had he told anyone else that he would not hire them or that they should not submit an application. Another of the plaintiffs (Crain) contacted Lyons, and Lyons told him that his chances of getting a job were slim, but that it was possible, and that he should submit an application; this plaintiff likewise failed to submit an application, and therefore he was not considered for appointment. The tenth plaintiff (Miller) did apply, but was not hired, on the basis of comments of people in the area and from personal knowledge, because Lyons thought he was not suitable for the job.[2]

In addition, the defendant Lyons relies upon documentary exhibits, which include some 200 written applications to him for employment, mostly in March and April of 1980, from among which he selected his appointees as deputies and employees. Further, the affidavit of at least one of the plaintiffs (Jean Simmons) indicates that at least some of former Sheriff Blair's staff were re-appointed by Lyons when he took office on June 1, 1980.

The affidavits of the ten plaintiffs do not contest these averments by Lyons. Instead, they rely upon the averments of their affidavits, which show:

No previous sheriff had required written applications for making an appointment. They[3] were never contacted by Sheriff-Elect Lyons to see if they were interested in employment, and they never received official word that they should apply if they wished appointment (although some of the

---

1. The terms of all the plaintiff deputies and employees expired on June 30, 1980, when the term of their appointing sheriff, Lyons' predecessor, ended.

2. Miller's affidavit is discussed *infra*.

3. The plaintiff Janice Simmons' affidavit, discussed in (2) *infra*, does state that Lyons contacted her about her mother's re-appointment.

affidavits indicate knowledge from street talk or other information that applications were being taken and that conferences were being held by Lyons with prospective appointees). Their "understanding" was that anyone who had actively supported the defeated sheriff would not be employed by Lyons, as a result of which they did not apply for re-appointment by Lyons.[4]

In addition, three of the plaintiffs—who had been the Chief Deputy, Chief Criminal Deputy, and Chief Civil Deputy in the prior sheriff's administration—averred that they felt it would have been futile to apply, since articles published in the local newspaper on March 21 and March 23, 1980, gave the names of Lyons' prospective appointees for these chief positions in this new sheriff's administration. The plaintiffs were not, apparently, interested in employment by Lyons in any position in his administration other than those they had held in his predecessor's, or at least they did not apply or inquire as to this possibility.

■ In summary, then, nine of the ten plaintiffs who were not re-appointed by the successor Sheriff Lyons when he took office on July 1, 1980, had never applied for re-appointment. The uncontradicted showing, in part supported also by some of the plaintiffs' affidavits, is to the effect that Lyons made his appointments only from a screening of the 200 written applications he had received, and that at least some of the former sheriff's personnel received re-appointments from Lyons through this process. The plaintiffs were never discouraged from applying or told that they should not apply; the one plaintiff who did inquire was told to apply, but he failed to do so. Their affidavits generally indicate that they failed to apply because of their "understanding" that the former sheriff's personnel would not be considered if they had actively supported his unsuccessful re-election bid, but their affidavits do not aver a factual basis for this "understanding" that reflect that it was based upon actions or statements by Lyons or by anyone who had been so informed by Lyons or by anyone in a position to impart this knowledge of Lyons' attitude.

As to these nine plaintiffs who failed to apply for re-appointment, the ruling in *McBee v. Jim Hogg County, Texas,* 730 F.2d 1009 (5th Cir.1984) (en banc), requires rejection of their § 1983 claims. We there stated:

Although the fact that the deputies were terminated by a 'failure to rehire' rather than a 'dismissal' is irrelevant to the question of whether they were impermissibly terminated for exercising First Amendment rights, the failure of these deputies to request rehire does raise a more basic question: Were they applicants for the job? Put another way, must a new sheriff consider for appointed positions ex-employees who do not seek reinstatement? The First Amendment imposes no such obligation.

*Id.* at 1015.

Under *McBee*'s rationale, thus, Sheriff Lyons had no duty to consider hiring any of his predecessor's deputies, unless they had applied for reappointment. The fact that Lyons had selected three of his chief deputies before he took office is irrelevant. These nine plaintiffs' failure even to apply for reappointment was, under *McBee*, sufficient reason for Lyons not to re-appoint them, and, further, is fatal to their § 1983 claim that Lyons' failure to re-appoint them was grounded upon their First Amendment-protected political activity and expression on behalf of Lyons' defeated opponent.

■ The remaining plaintiff, Miller, did submit an application for continued employment with Lyons, the new sheriff. As earlier noted, Lyons' affidavit averred legitimate, non-retaliatory reasons for failing to rehire Miller. Miller's total claim that Lyons violated his political and civil rights by failing to reappoint him is: "I was told on numerous occasions that anyone who got out and supported Sheriff Blair was

---

4. Only one of the plaintiffs (Devon Thomas) indicated the basis of this "understanding"—he states he learned it "from various sources, in- cluding Lavelle Breland"—who is nowhere identified, and is not shown to have been a member of Lyons' group or privy to his plans.

not going to get re-hired." This averment, like those of the other affidavits, is devoid of an allegation that the defendant Lyons himself directly or indirectly through others so stated, or that Lyons failed to re-appoint Miller for political reasons. "The affidavit contains nothing more than a recital of unsupported allegations, conclusory in nature. As such, it is insufficient to avoid summary judgment." *Broadway v. City of Montgomery, Alabama*, 530 F.2d 657, 660 (5th Cir.1976).

Accordingly, the district court did not err in granting the defendant Lyons' motion for summary judgment that dismissed the § 1983 claims of the ten plaintiffs.

*(2) The Title VII Claim*

In granting a summary judgment that dismissed all claims of all ten plaintiffs, the district court did not refer to the Title VII claims of the two female plaintiffs: Mrs. Jean Simmons, Chief Civil Deputy under the defeated Sheriff Blair; and her daughter, Janice Simmons, a tax collector clerk in her mother's division of the former sheriff's office. Nor does the defendant Sheriff Lyons' affidavits refer to these claims of gender discrimination. No factual showing negating gender discrimination was made to justify dismissal by summary judgment of these two plaintiffs' Title VII claim. No pleading or factual showing suggests that these two plaintiffs did not timely file discrimination charges before the administrative agency and exhaust administrative remedies before timely filing suit as provided by 42 U.S.C. § 2000e–5.

In their complaint, these two female plaintiffs pray for relief because of Lyons' acts in "withholding, conditioning, limiting or otherwise interfering with the rights of these plaintiffs to equal employment opportunities because of their sex as secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq.*" The complaint itself only refers to Lyons' employment practices that impermissibly favored men over women—and no affidavit sheds light

either way on this contention. Additionally, however, the affidavit of one of the two female plaintiffs contains factual averment that raises an issue of employment discrimination based on her female gender.

The affidavit of Janice Simmons, the daughter, is to the effect that neither she nor her mother was re-hired because she refused to accord the defendant Lyons sexual favors. She states that, at Lyons' request and before he took office, she rode with him "to a deserted parish road," where "Lyons suggested that my mother's job was safe and that he and myself could 'see each other'. I was concerned about my mother's job, but I didn't want to have anything to do with him; I felt that 'seeing each other' could have sexual overtones because of the circumstances and context in which it was said." The affidavit also alleges that Lyons made similar requests on other occasions. (Lyons' own affidavit does not mention these allegations.)

■ Title VII prohibits, as an unlawful employment practice, an employer's failure or refusal "to hire ... any individual, or otherwise to discriminate against any individual ... because of an individual's sex." 42 U.S.C. § 2000e–2(a)(1). In the effectuation of its enforcement powers under Title VII, the Equal Employment Opportunity Commission was granted by Congress the authority to issue "such rules, regulations, orders and instructions as it deems necessary and appropriate to carry out its responsibilities." 42 U.S.C. § 2000e–16(b). These regulations are "entitled to great deference" by the courts. *Albemarle Paper Company v. Moody*, 422 U.S. 405, 431, 95 S.Ct. 2362, 2378, 45 L.Ed.2d 280 (1975), *quoting, Griggs v. Duke Power Co.*, 401 U.S. 424, 434, 91 S.Ct. 849, 855, 28 L.Ed.2d 158 (1971).

■ Pursuant to that authority, the Commission issued regulations that provide that under certain circumstances sexual harassment will constitute gender employment discrimination violative of Title VII.[5]

---

**5.** 28 C.F.R. § 1604.11(a), (b) (1984) provides:

(a) Harassment on the basis of sex is a violation of Sec. 703 of Title VII. Unwelcomed

Under these regulations, harassment on the basis of sex includes "[u]nwelcomed sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature", when "submission to such conduct is made either explicitly or implicitly" a condition of an individual's employment, or when "submission to or rejection of such conduct is used as the basis for employment decisions affecting such individual." 28 C.F.R. § 1604.11(a).

Under this interpretative regulation, Janice Simmons has raised a factual issue that, in order for her mother and herself to be re-employed when the new sheriff took office, she would have to submit to unwelcome sexual advances. Although this circuit has never expressly held yet that sexual harassment may constitute employment discrimination under Title VII, every other circuit that has passed upon the issue has held that conduct of this nature constitutes employment discrimination because of the victimized individual's sex.[6] We can perceive no reason why this circuit should reach a contrary conclusion.

Thus, as to at least the daughter Janice Simmons, a genuine issue of material fact affirmatively appears from her affidavit. She was denied re-employment because she would not submit to her prospective employer's unwanted advances of sexual nature.

◼ We were initially given some concern as to whether the alleged sexual discrimination was by an "employer" covered by Title VII, since the act of sexual harassment took place before Lyons took office on July 1, 1980. On reflection, however, the discriminatory employment violation based on sex or gender occurred when Lyons failed to re-hire Miss Simmons on or after July 1, 1980—allegedly because of her rejection of his sexual advances—, at which time Lyons was an employer within the definition of Title VII. 42 U.S.C. § 2000e(b). Further, Title VII's prohibitions against discriminatory employment practices do not apply only to an existing employment relationship but also to prospective employment relationships that do not eventuate because of the discriminatory conduct—as where an *applicant* for employment is denied employment for a prohibited discriminatory reason.

◼ We need not at this stage of the record reach the less certain conclusion that the *mother*, not re-hired because her *daughter* rejected the prospective employer's advances, was herself entitled to Title VII relief on the basis that she was not

sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitutes sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

(b) In determining whether alleged conduct constitutes sexual harassment, the Commission will look at the record as a whole and at the legality of the circumstances, such as the nature of the sexual advances and the context in which the alleged instances occurred. The determination of the legality of a particular action will be made from the facts, on a case by case period.

6. *See, e.g., Henson v. City of Dundee,* 682 F.2d 897, 908–09 (11th Cir.1982); *Miller v. Bank of America,* 600 F.2d 211, 213 (9th Cir.1979); *Tomkins v. Public Service Electric & Gas Co.,* 568 F.2d 1044, 1048–49 (3rd Cir.1977); *Barnes v. Costle,* 561 F.2d 983, 990–91 (D.C.Cir.1977); *Garber v. Saxon Business Products, Inc.,* 552 F.2d 1032, 1032 (4th Cir.1977) (per curiam) (complaint and its exhibits should be liberally construed on appeal in Title VII cases involving alleged sexual harassment). *See also* A. Larson & L. Larson, 1 *Employment Discrimination* § 41.62 (1984) ("... the universal rule now is that sexual harassment on the job can be employment discrimination within the meaning of Title VII"); Note, "Sexual Harassment and Title VII: The Foundation for the Elimination of Sexual Cooperation as an Employment Condition," 76 Mich.L.Rev. 1007, 1008 (1978) ("... Title VII, as enacted by Congress and interpreted by the Judiciary, prohibits making sexual cooperation a condition of employment").

re-employed due to sex discrimination.[7] We need not reach this issue, because—on the record before us—no factual showing was educed by the defendant to negate the allegations of her complaint that the failure to re-employ her resulted from gender-based discriminatory employment practices of the defendant Lyons that favored men over women.[8]

*Conclusion*

Accordingly, we AFFIRM the judgment dismissing the plaintiff's § 1983 claims, but we VACATE the district court's grant of summary judgment dismissing the Title VII claims of the plaintiffs Jean and Janice Simmons.

Judges RUBIN and RANDALL concur in Part I of this opinion because *McBee* is the law of the circuit. They adhere to the views stated by Judge RUBIN in dissenting from that decision. *See* 730 F.2d at 1017.

AFFIRMED IN PART; VACATED IN PART.

---

**7.** The only published decisions we could find that were somewhat relevant to the issue recognized a Title VII claim of employment discrimination in favor of a father or a wife who suffered employment discrimination because their son or husband had engaged in statutorily protected activity (filing a Title VII claim against their employer). *DeMedina v. Reinhardt*, 444 F.Supp. 573 (D.C.D.1978); *Kent v. R.J. Reynolds Tobacco Co.*, 27 FEP Cases 1628 (E.D.La.1982). *See also* Note, Sexual Harassment and Title VII, 76 Mich.L.Rev. 1007, 1031–32 (other persons aggrieved by sexual discrimination in favor of a victim are likewise protected by Title VII).

**8.** On the remand, a further issue will be the possible application of a Title VII exemption to Mrs. Jean Simmons, the Chief Civil Deputy. 42

U.S.C. § 2000e(f) defines "employees" for purposes of the Act as *not* including "any person chosen by [a person elected to public office] to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office."

Whether a particular deputy to a sheriff is within this exemption "is a question of federal, rather than state law", and depends on the "nature and circumstances" of the deputy sheriff's position and "whether, in light of the language and history of Title VII, Congress intended that one in that position receive the protection of the act." *Calderon v. Martin County*, 639 F.2d 271, 273 (5th Cir.1981). The record at this stage is, of course, undeveloped as to his issue.