**TEXTRON INNOVATIONS, INC., Plaintiff,**

v.

**AMERICAN EUROCOPTER, LLC, et al., Defendants.**

**No. 4:09–CV–377–A.**

United States District Court, N.D. Texas, Fort Worth Division.

Feb. 25, 2011.

John G. Sams, Adam L. Plumbley, Beale Dean, Stephen C. Howell, Vince Cruz, Jr., Brown Dean Wiseman Proctor Hart & Howell, Fort Worth, TX, Calvin E. Wingfield, Jr., Michael S. Devincenzo, Goodwin Procter LLP, New York, NY, Charles H. Sanders, Goodwin Procter LLP, Boston, MA, Christopher C. Campbell, Scott L. Robertson, Goodwin Procter LLP, Washington, DC, for Plaintiff.

Michael V. Powell, Mark R. Backofen, Roy W. Hardin, Thomas G. Yoxall, Locke Lord Bissell & Liddell LLP, Dallas, TX, for Defendants.

### MEMORANDUM OPINION and ORDER

JOHN McBRYDE, District Judge.

Before the court for decision is the motion for summary judgment of defendants, American Eurocopter Corporation,[1] and Eurocopter, seeking a summary adjudication that the patent infringement claims of plaintiff, Textron Innovations, Inc., against them are without merit. After having considered such motion, plaintiff's response in opposition, defendants' reply, the remaining parts of the summary judgment record, and applicable legal authorities, the court has concluded that such motion should be granted.

**1.** There seems to be agreement between the parties that American Eurocopter Corporation is the proper defendant in place of Amer-

## I.

### *Nature of the Litigation*

The motion for summary judgment is directed to the claims made by plaintiff in Count III of the second amended complaint. Counts I and II were dismissed by final judgment as to certain parties and claims signed May 12, 2010. By the remaining count plaintiff accuses defendants of infringing and/or inducing infringement and/or contributing to the infringement of United States Patent No. 5,462,242 ("'242 patent"), which plaintiff owns as the assignee of the patent. The subject of the '242 patent is a landing-gear assembly for use on a helicopter.

Plaintiff's claim of infringement relates to the "making, using [sic] offering for sale, and/or selling within the United States, and/or importing into the United States helicopters with infringing landing gear assemblies, including without limitation [defendants'] EC120 helicopter...." Second Am. Compl. at 17, ¶ 77. More specifically, plaintiff alleges that:

Defendants' landing gear infringes because, *inter alia* and upon information and belief, it has a strap and crosstube with the following features: the strap has an inner surface adapted to engage an outer surface of a crosstube; the strap has an outer surface including a stop surface for mating with a bracket to minimize lateral movement of the bracket on the strap: the strap extends over the top of the crosstube and generally half way around the crosstube, terminating in two lower edges that extend axially with respect to the crosstube; the strap has a plurality of strap fastener holes located proximate to the neutral bending axis of the crosstube to mini-

ican Eurocopter, LLC, the latter having been merged into the former in December 1999.

mize stress at the strap fastener holes, the strap is otherwise imperforate to minimize stress concentration; the crosstube has crosstube fastener holes registering with the strap fastener holes on the strap; the strap is fastened to the crosstube through the strap fastener holes and crosstube fastener holes; and the outer surface and an inner surface of the crosstube have built-in residual compressive stresses for improving fatigue strength and improving resistance to corrosion and mechanical damage.

*Id.* at 18, ¶ 77.

Plaintiff seeks recovery from defendants of damages to compensate it for defendants' alleged infringement, together with costs and interest, attorneys' fees under 35 U.S.C. § 285, and an injunction against further infringement.

## II.

### *Grounds of Defendants' Motion*

Defendants' motion seeks a summary adjudication that neither of them infringed the '242 patent for each of the following reasons:

1. None of the claims of the '242 patent are infringed by the landing gear assemblies of the EC 120 helicopter, because the claims are expressly limited to improved replacement landing gear assemblies. The landing gear that is sold as part of an EC 120 helicopter does not infringe because it is not a replacement landing gear assembly. Eurocopter and American do not sell or distribute complete replacement landing gear assemblies for the EC 120 helicopter, but rather only individual parts that are not improved but are the same as those sold as part of the EC 120 helicopter.

2. None of the claims of the '242 patent are infringed, either literally or under the doctrine of equivalents, because the bracket does not extend into engagement with the strap and the strap does not have an outer surface that mates with the bracket to prevent movement of the bracket on the strap, either literally or under the doctrine of equivalents. Instead, the bracket surrounds a rubber gasket that contacts the stop.

3. Claims 1–9 and 19–26 of the '242 patent are not infringed because the outer and inner surfaces of the cross-tubes do not, literally or under the doctrine of equivalents, have "built-in compressive stresses for improving fatigue strength and improving resistance to corrosion and mechanical damage" as required by those claims.

4. Claims 10–18 of the '242 Patent are not infringed because there is no evidence that the cross tubes, when in the cross tube configuration, have a ratio of fatigue strength over yield strength of not less than 0.35, either literally or under the doctrine of equivalents.

Mot. at 1–2. Eurocopter adds a fifth reason for noninfringment as to it:

5. Eurocopter cannot be found to infringe the '242 patent because it has not manufactured, used, imported, sold, or offered to sell the EC 120 helicopter or replacement parts for the landing gear of the EC 120 helicopter into the United States. All of Eurocopter's business activities related to the EC 120 helicopter were conducted outside the United States and thus do not infringe a United States patent.

*Id.* at 2.

In the interest of judicial economy, the court is addressing in this memorandum opinion only the first two reasons.

## III.

### *Patent '242*

Patent '242 was issued October 31, 1995, pursuant to an application filed November 5, 1993. It shows Bell Helicopter Textron,

Inc., as the assignee. Apparently the parties are in agreement that sometime after the patent was issued it was assigned by Bell Helicopter Textron, Inc., to plaintiff, which now is the owner of the patent.

The title of the patent is "Helicopter Landing Gear Assembly." Of the twenty-six claims in the patent, three (claims 1, 10, and 19) are independent. Each of the others is dependent on one of the independent claims, thus incorporating all of the elements of the independent claim. Plaintiff opposes the motion for summary judgment in reliance on independent claim 10 and dependent claims 11–12 and 16–18. Independent claim 10 is worded as follows:

10. An improved replacement helicopter landing gear assembly, of the type having a bracket extending from the helicopter fuselage into engagement with a strap on top of a generally cylindrical crosstube that supports landing devices, the bracket engaging the strap and stabilizing the fuselage with respect to the crosstube, the improvement comprising:

the strap having an inner surface adapted to engage an outer surface of the crosstube;

the strap having an outer surface including a stop surface for mating with the bracket to minimize lateral movement of the bracket on the strap;

the strap extending over the top of the crosstube and generally one half around the crosstube, terminating in two lower edges that extend axially with respect to the tube;

the strap having a plurality of strap fastener holes located proximate to the neutral bending axis of the crosstube to minimize stress at the strap fastener holes, the strap being otherwise imperforate to minimize stress concentration;

the crosstube having crosstube fastener holes registering with the strap fastener holes on the strap;

the strap being fastened to the crosstube through the strap fastener holes and the crosstube fastener holes; and

the crosstube being made of a material which, in a crosstube configuration, has a ratio of fatigue strength over yield strength of not less than 0.35.

Mot., App. at 35 [col. 7, lines 9–38]. Claims 11–12 and 16–18, which are dependent on claim 10, are worded as follows:

11. The landing gear assembly according to claim 10 wherein the strap extends around the crosstube so that the lower edges of the strap lie on a plane through the neutral bending axis of the crosstube, and wherein the strap fastener holes are located essentially 15 degrees above the lower edges of the strap.

12. The landing gear assembly according to claim 10 wherein the crosstube is formed in an unstable temper condition to reduce the stresses built into the crosstube during formation.

. . . .

16. The landing gear assembly according to claim 10 wherein a region of material around the crosstube fastener holes is cold worked to help prevent crack initiation at the crosstube fastener holes.

17. The landing gear assembly according to claim 10 further comprising an upper protective barrier located between the strap and the crosstube to reduce abrasion between the strap and the crosstube.

18. The landing gear assembly according to claim 10 further comprising at least one lower protective barrier located between a bottom portion of the crosstube and the bracket for reducing

abrasion between the bracket and the crosstube.

*Id.* [col. 7, lines 39–48, 59–67; col. 8, lines 1–4].

## IV.

### *Analysis*

#### A. *Pertinent Summary Judgment Burdens*

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The party opposing the motion may not rest on mere allegations or denials of the pleadings, but must set forth specific facts showing a genuine issue for trial. *Anderson,* 477 U.S. at 248, 256, 106 S.Ct. 2505. To meet this burden, the nonmov-

ant must "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s]." *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir.1994). An issue is material only if its resolution could affect the outcome of the action. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. *Simmons v. Lyons,* 746 F.2d 265, 269 (5th Cir.1984).

#### B. *The First Two Reasons Given by Defendants for Noninfringement*

##### 1. *The First Reason–Based on the Use of the Words "Improved" and "Replacement" in the '242 Patent*

■ The words "improved" and "replacement" are used throughout the '242 patent and its prosecution history, either separately or together in the term "improved replacement."

The first sentence of the "Abstract" makes reference to "[a]n *improved* helicopter landing gear assembly."[2] Mot., App. at 26. The remainder of the Abstract describes in a general way the improvements contemplated by the invention. The concluding sentence says that the combination of the described improvements results in a substantially increased life of the landing gear assembly. *Id.* The word "replacement" is not used in the Abstract. *Id.*

Under the subheading "Field of the Invention," below the heading "Background of the Invention," the first sentence states that the invention relates "in particular to an *improved replacement* landing gear assembly" of a specified type. *Id.* at 32 [col. 1, lines 7–10]. There are descriptions under the further subheading "Description of

---

**2.** Whenever the words "improved" or "replacement" are emphasized in the text, the emphasis has been added.

the Prior Art" of landing gear assemblies currently being used by several helicopter models that suffer from the problem of premature failure caused by corrosion and fatigue, with the result that the crosstubes of the landing gear assemblies must eventually be *replaced. Id.* [col. 1, lines 12–37]. Other shortcomings of landing gear assemblies currently in use are described, with the explanation that, because of the problems with landing gear assemblies currently in use, they have been limited to a shorter service life than is desirable. *Id.* [col. 1, lines 52–54]. The final sentence states that "[i]t would be beneficial to have a *replacement* landing gear assembly that would have a substantially longer service life than the prior art landing gear assemblies." *Id.* [col. 1, lines 54–57].

In the first sentence under the heading "Summary of the Invention," the statement is made that "[i]t is the general object of the invention to provide an *improved replacement* helicopter landing gear assembly to substantially increase useful service life," *id.* [col. 1, lines 61–63], which is followed by a summary description of the invention.

Under the heading "Description of the Preferred Embodiment," the statements are made that "[t]he diameter of the outer surface 26 of the crosstubes 14 has to remain unchanged from the prior art crosstubes so that the new crosstubes can be used as *replacements* for the old crosstubes ...," *id.* at 33 [col. 4, lines 21–24], and that "[t]he prior art crosstubes that this preferred embodiment is designed to be a *replacement* for, were constructed of

the aluminum alloy ...," *id.* at 33 [col. 4, lines 25–28]. Under that same heading reference is made twice to "improvements," and twice to an "improvement," made by the invention over prior art landing gear assemblies. *Id.* [col. 4, lines 25–28, 33]; 34 [col. 5, lines 18, 55; col. 6, line 7].

■ The preamble to each of the independent claims starts with the words "[w]hat is claimed is ... [a]n *improved replacement* helicopter landing gear assembly," followed by a general description of the components of the assembly contemplated by the invention and then by the words "the *improvement* comprising." [3] *Id.* at 34 [col. 6, lines 15–21]; 34 [col. 6, line 15] and 35 [col. 7, lines 10–16]; 34 [col. 6, line 15] and 35 [col. 8, lines 5–11].

The word *"replacement"* in each of the preambles was added by an amendment filed in response to the Examiner's rejection of the claims as originally stated. *Id.* at 43–46. Under the heading "Applicant's Claimed Invention," the explanation was given in the amendment document that prior-art landing gear assemblies have a short useful life brought about by premature failure caused by corrosion and fatigue and that "[t]o avoid failure, the crosstubes have to be *replaced* frequently." *Id.* at 46. Under that same heading, the following additional explanations were provided:

Applicant's invention is directed to a *replacement* landing gear assembly with increased useful life (page 2, lines 2–4). Making a *replacement* landing gear as-

---

**3.** Each of the independent claims appears to have been written in Jepson format, "meaning that the claim first describes the scope of the prior art and then claims an improvement over the prior art." *Dow Chem. Co. v. Sumitomo Chem. Co., Ltd.*, 257 F.3d 1364, 1368 (Fed.Cir.2001). *See also Geo M. Martin Co. v. Alliance Mach. Sys.*, 618 F.3d 1294, 1298 (Fed.Cir.2010). "When [the Jepson] form is

employed, the claim preamble defines not only the context of the claimed invention, but also its scope." *Rowe v. Dror*, 112 F.3d 473, 479 (Fed.Cir.1997). "Thus, the preamble is a limitation in a Jepson-type claim" and "in Jepson format, the preamble helps define the scope of the invention." *Epcon Gas Svs., Inc. v. Bauer Compressors. Inc.*, 279 F.3d 1022, 1029 (Fed.Cir.2002).

sembly results in additional criteria which must be met. For example, the outer diameter of the crosstubes must remain unchanged so that the crosstubes can properly engage the already existing bracket extending from the helicopter fuselage. These additional criteria must be met while still meeting the primary criteria of the landing gear assembly, namely, absorption of a specific amount of energy.

Prior to this invention, manufacturers of *replacement* landing gear assemblies have found it necessary to require rather frequent *replacement* of the landing gear assemblies because of the inability to design landing gear assemblies with a useful life approaching the life of the helicopter. Applicant's invention solves this problem by providing an *improved replacement* landing gear assembly with a useful life substantially greater than that of prior-art landing gear assemblies.

Applicant's claimed invention achieves its objectives by a combination of *improvements* to the prior-art landing gear assemblies. One of the *improvements* is the placement of the strap fastener holes only near the neutral bending axis of the crosstube. Another *improvement* is the use of built-in residual compressive stresses on the outer and inner surfaces of the crosstubes. Yet another *improvement* is the use of a material which, in a crosstube configuration, has a ratio of fatigue strength over yield strength of not less than 0.35.

*Id.* at 47–48. The amendment document added that the "above *improvements* are claimed in the independent claims." *Id.* at 48.

Under the heading of "Nonobviousness of Claim 10," the amendment document again spoke of the need for the invention to have a crosstube outer diameter the same as the crosstube being *replaced. Id.*

at 52. The amendment document also made reference to various solutions attempted by the industry to solve landing gear problems and to the "industry's failure to build a *replacement* landing gear assembly having a useful life close to that of the landing gear of the present invention." *Id.* at 53.

Defendants argue that:

The use of the term "replacement" in the claims necessarily excludes the helicopter's *original* landing gear since there needs to be something that is being "replaced" for there to be a replacement. Therefore, the claims cannot cover the *original* landing gear of the allegedly infringing EC 120 helicopter, but rather only a landing gear assembly used on the helicopter after the original is removed....

. . . .

In the context of the '242 patent, the limitation "improved replacement helicopter landing gear" also requires that the replacement landing gear assembly that is being claimed is improved or otherwise different from the original landing gear on the helicopter when it was originally sold.

Br. in Supp. of Mot. at 13–14. In response, plaintiff maintains that "the terms 'improved' and 'replacement' in the claim preamble mean an improvement to and replacement for *prior art* landing gear assemblies, or components thereof." Br. in Opp'n at 17.

The court agrees with plaintiff that the word "improved," as used in the preambles to the claims, denotes no more than that the invention is thought to be an improvement over prior art landing gear assemblies; and, the court agrees with defendants that the word "replacement," as used in the preambles, denotes the intent that the invention, an improved helicopter landing gear assembly, is to be used as a

replacement for a landing gear assembly already installed on a helicopter and that its construction be suitable for that purpose. To whatever extent there might have been uncertainty on those subjects before the application was amended, it would have been eliminated by the wording in the amendment document, which makes clear that the words "replacement" and "improvement" as used in the patent have entirely different meanings, and that the invention's improvements were "directed to a replacement landing gear assembly with increased useful life," Mot., App. at 47. Particularly significant to the subjects under discussion is the language quoted *supra* at 12–13.[4] The invention's stated purposes were (a) to make improvements on landing gear assemblies that, before the invention, were being used as replacements for inadequate landing gear assemblies in use on helicopters so that the improved replacement landing gear assemblies would not be subject to failures of the kinds being experienced by the prior art replacement assemblies and (b) to cause the replacement assemblies to be structurally compatible for use as replacements.

■ Plaintiff takes the position that even if the word "replacement" indicates that the anticipated use of the invention would be as replacements for landing gear assemblies previously installed on helicopters, defendants are no better off because an anticipated use of the invention does not create an added limitation, and that the absence of use-as-replacement language in the claimed improvements causes the anticipated use to be irrelevant. There is case authority providing superficial support for plaintiff's position. "Absent an express limitation to the contrary, *any* use of a device that meets all of the limitations of an apparatus claim written in structural terms infringes that apparatus claim." *Paragon Solutions, LLC v. Timex Corp.*, 566 F.3d 1075, 1091 (Fed.Cir.2009). "[A] preamble is not limiting where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed.Cir.2002) (internal quotation marks omitted) (quoting *Rowe v. Dror*, 112 F.3d 473, 478 (Fed.Cir.1997)).

■ However, the more persuasive authority is that "clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art transforms the preamble into a claim limitation because such reliance indicates use of the preamble to define, in part, the claimed invention." *Id.* at 808. Paraphrasing language the Federal Circuit used in *Omega Engineering, Inc. v. Raytek Corp.*, the fact that the prosecution history discloses that "the applicant took a position before the PTO that would lead a competitor to believe that the applicant had disavowed coverage of [landing gear assemblies other than those that were to be used as replacements for previously installed assemblies]" is an important consideration. 334 F.3d 1314, 1325 (Fed.Cir. 2003).

■ The court has concluded that the addition by the amendment document

4. Prosecution history, such as the description of the claimed invention set forth in the quotation marks at pages 12–13 of this memorandum opinion, can be used to limit the scope of a claim when "the applicant [has taken] a position before the PTO that would lead a competitor to believe that the applicant had disavowed coverage of the relevant subject matter." *Omega Eng'g. Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325 (Fed.Cir.2003). The position the applicant took in the amendment document was a confirmation that the applicant had disavowed coverage of original equipment landing gear assemblies and was limiting the coverage to assemblies used as replacements.

of the word "replacement" to the preamble to each of the independent claims indicates the applicant's clear reliance on the preamble during prosecution to transform the preamble into a claim limitation. The explanations given for the amendment to the preamble add to that clarity.[5] *See supra* at 12–13. The addition of the word "replacement" to the preamble helps define the scope of the invention, *see Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.,* 279 F.3d 1022, 1029 (Fed.Cir.2002), and, thus, is a limitation on the independent claims. As the Federal Circuit explained in *Bell Communications v. Vitalink Communications:*

> [W]hen the claim drafter chooses to use *both* the preamble and the body to define the subject matter of the claimed invention, the invention so defined, and not some other, is the one the patent protects. [T]erms appearing in a preamble may be deemed limitations of a claim when they give meaning to the claim and properly define the invention. . . . Whether a preamble of intended purpose constitutes a limitation to the claim is, as has long been established, a matter to be determined on the facts of each case in view of the claimed invention as a whole.

55 F.3d 615, 620 (Fed.Cir.1995) (citations, internal quotation marks, parentheses, and footnote omitted). The key effect to be given to the wording of a preamble was explained by the Federal Circuit in *In re Paulsen* as follows:

Although no "litmus test" exists as to what effect should be accorded to words contained in a preamble, review of a patent in its entirety should be made to determine whether the inventors intended such language to represent an additional structural limitation or mere introductory language.

30 F.3d 1475, 1479 (Fed.Cir.1994). If a word in the preamble "breathes life and meaning into the claims" it "is a necessary limitation to them." *Id.*

■ The adding by the amendment document of the word "replacement" to each of the preambles represents an additional structural limitation because, at the least, it adds to the claims the concept expressed in the specifications and prosecution history that the structure of the invention must be compatible with the assembly it is to replace, i.e., the outer diameter of the crosstubes of the replacement landing gear assembly must be the same as the crosstubes on the assembly it is to replace. Recall, the specifications said that "[t]he diameter of the outer surface 26 of the crosstubes 14 has to remain unchanged from the prior art crosstubes so that the new crosstubes can be used as replacements for the old crosstubes." Mot., App. at 33 [col. 4, lines 21–24]. And, the amendment document makes clear that the mere use of the word "replacement" in the preamble implies additional criteria that must be met. Telling is the following language from the amendment document:

---

**5.** Claim interpretation begins with the claims themselves, the written description, and the prosecution history. *Microsoft Corp. v. Multi-Tech Sys., Inc.,* 357 F.3d 1340, 1346 (Fed.Cir. 2004). *See also Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed.Cir.1996). The ordinary meaning of terms used in the claims must be derived in the context of the written description and the prosecution history. *Phillips v. AWH Corp.,* 415 F.3d 1303,

1313 (Fed.Cir.2005). The prosecution history can serve to confirm an otherwise doubtful meaning of a claim. *Microsoft Corp.,* 357 F.3d at 1349. The amendments to the claims, and all arguments to overcome and distinguish references, constitute, of course, prosecution history. *Seachange Int'l, Inc. v. C-COR, Inc.,* 413 F.3d 1361, 1372 (Fed.Cir. 2005).

Applicant's invention is directed to a replacement landing gear assembly with increased useful life (page 2, lines 2–4). *Making a replacement landing gear assembly results in additional criteria which must be met.* For example, the outer diameter of the crosstubes must remain unchanged so that the crosstubes can properly engage the already existing bracket extending from the helicopter fuselage.

*Id.* at 47 (emphasis added). The same point is made specifically as to independent claim 10. *Id.* at 52.

Without the addition of the word "replacement" to the wording of the independent claims, there would be nothing in the independent claims providing, for instance, the obviously-intended limitation that the structure of each specimen of the invention must have crosstubes having the same outer diameter of the crosstubes that exist on the landing gear assembly that is to be replaced by an assembly made to the other limitations of the patent.

For the reasons stated above, the court concludes that the landing gear assemblies installed as original equipment by defendants, or either of them, on helicopters do not infringe the '242 patent.

■■■ This brings the court to the issue of whether the patent was infringed by the making and supplying by one or both defendants of landing gear assemblies, or parts thereof, for use in the replacement or repair of originally installed landing gear assemblies.

In addition to taking the position that original equipment landing gear assemblies on defendant's helicopter do not infringe the patent by reason of the "improved replacement landing gear assembly" language, defendants argue in that same section of their brief that:

> Further, the claims expressly require that the replacement landing gear assembly contain certain parts, namely 1) the bracket that connects the landing gear to the helicopter fuselage, 2) a cross-stube, and 3) a strap that is located on the cross tube. The specification even describes the field of the invention as being particularly related to landing gears of the type that have all three of these required parts. As a result, even parts sold for the purpose of substituting out the original parts are not an "assembly" unless all three parts are present. Piecemeal replacement of individual parts (*e.g.*, a cross tube) cannot be said to be use of the patented three piece "assembly."

Br. in Supp. of Mot. at 13–14 (references omitted). Defendants maintain that: "There is no replacement landing gear assembly offered for sale that contains the bracket, the cross tube and the strap (or stop) on the cross tube. Instead, only the individual replacement parts can be purchased by customers." *Id.* at 15–16 (record references omitted). In conclusion, defendants argue that:

> [S]ince there is no evidence of an improved replacement landing gear assembly for the EC 120 that is different from the original landing gear and that also contains a bracket, a strap, and a crosstube the replacement landing gear limitation is not met either literally or under the doctrine of equivalents, and none of the claims are infringed as a matter of law.

*Id.* at 17.

Plaintiff responds that, even if defendants sell only component parts and not the entire landing gear assemblies, defendants cannot avoid liability for infringement. Br. in Opp'n at 23. In support of its response, plaintiff relies on 35 U.S.C. § 271(c), which states in pertinent part that:

> Whoever offers to sell or sells within the United States … a component of a

patented machine . . . constituting a material part of the invention, knowing the same to be especially made . . . for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

35 U.S.C. § 271(c).

As the Federal Circuit explained in *Fujitsu Ltd. v. Netgear Inc.*, to establish contributory infringement as contemplated by § 271(c), "the patent owner must show . . . 1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention." 620 F.3d 1321, 1326 (Fed.Cir.2010). In their reply, defendants maintain that contributory infringement cannot be shown because there is no evidence that any component it furnished was used by a third party in a direct infringement of the '242 patent. Reply. at 11–12. The court agrees with defendants.

■■■ The unchallenged summary judgment evidence is that defendants do not sell a replacement landing gear assembly that contains a bracket, a strap, and a crosstube. Instead, the record shows that defendants sell only individual components of the type landing gear installed on the EC120 and not entire replacement assemblies. Mot., App. at 4, ¶ 4, There is no evidence that any of defendants' customers replaced all three required parts of the landing gear assembly on a single helicopter. "[I]t is not enough to simply show that a product is capable of infringement; the patent owner must show evidence of specific instances of direct infringement." *Fujitsu Ltd.*, 620 F.3d at 1329. Consequently, even if the court assumes, *arguendo*, that a combination of components of defendants' assembly would infringe, there is no summary judgment evidence of

any direct infringement, with the result that there is no summary judgment evidence of a fact that must exist for defendants to be liable for contributory infringement.

2. *The Second Reason–Absence on Defendants' Landing Gear Assembly of Features of the Claims of the '242 Patent Having to Do with the Straps*

■■■ The independent claims of the '242 patent require, *inter alia,* that:

(a) "the landing gear assembly [have] a bracket extending from a helicopter fuselage into engagement with a strap on top of a generally cylindrical crosstube," Mot., App. at 34–35 [col. 6, lines 17–20; col. 7, lines 10–13; col. 8, lines 6–9]; and

(b) "the strap [have] an outer surface including a stop surface for mating with the bracket to minimize lateral movement of the bracket on the strap," *id.* [col. 6, lines 25–27; col. 7, lines 19–21; col. 8, lines 14–16].

According to defendants, "[t]he ordinary meaning of these limitations requires that 1) the bracket seats on the strap, and 2) the stop surface of the strap contacts the bracket to minimize movement." Br. in Supp. of Mot. at 18. Defendants argue that:

[S]ince there is no evidence to support a factual finding that the landing gear of the EC 120 helicopter has a bracket that seats on the strap, a stop surface that contacts the bracket, or that minimizes the lateral movement of the strap either literally or under the doctrine of equivalents, none of the claims are infringed as a matter of law.

Br. in Supp. of Mot. at 23.

The court agrees that when the strap limitations mentioned above are properly construed, defendants' landing gear assembly does not infringe the '242 patent be-

cause those limitations are not met. The accused assembly does not contain a strap as required by the claims in the '242 patent. The ordinary meaning of the limitations under discussion requires that the bracket seats on the strap and that the stop surface of the strap contacts the bracket to minimize movement. Inasmuch as the movement of the bracket on the strap is what must be minimized by the stop surface, necessarily the claims require the bracket to be seated on top of the strap-otherwise, there would be no movement of the bracket *on the strap* to be minimized. This claim construction is supported by the various descriptions of the invention in the specification, which consistently describe and show the patented assembly as having the bracket fitting over the strap. Mot., App. at 27, fig. 2A. The '242 patent specification states that "the upper bracket 22a fits over the strap 20 which in turn is fastened to the top of the crosstube 14." *Id.* at 33 [col. 3, lines 60–62]. And, the specification also states that each "upper bracket 22a is fastened to its corresponding lower bracket 22b so as to clamp around the corresponding crosstube 14 and strap 20." *Id.* at 32–33 [col. 2, line 66 to col. 3, line 2].

On the subject of the stop surfaces on the strap, the specification states that "[i]f forces are applied to bracket 22 or to crosstube 14 that tend to slide the bracket longitudinally along strap 20, one of the stop surfaces 34 will engage side 60 of contact bands 58 of one of the brackets 22 and prevent the movement of bracket 22 with respect to strap 20 or crosstube 14."

*Id.* at 33 [col. 4, lines 13–18]. According to the claims, the mating of a stop surface on the bracket is what minimizes the lateral movement of the bracket on the strap, *id.* at 34 [col. 6, lines 25–27]; and, the ordinary meaning of the term "mating" requires that there at least be contact between the stop surface and the bracket at some point in time.

The summary judgment evidence shows without dispute that the EC 120 helicopter landing gear assembly does not meet the strap limitations. There is no strap on the front crosstube of that assembly used in connection with the brackets that secures the crosstube to the helicopter fuselage. *Id.* at 36. The bracket on the rear crosstube clamps around a rubber gasket surrounding the crosstube, not a strap. The gasket cannot be considered to be a strap inasmuch as it has no holes in it. *Id.* The only pieces with holes for connection to the crosstubes are the stop pieces. *Id.* However, the bracket does not clamp around or seat on top of the stop pieces. *Id.* Consequently, there cannot be lateral movement of the bracket on the strap or stop that can be minimized. In addition, there is no stop surface on each stop on the rear crosstube that contacts or otherwise mates with the bracket. *Id.* at 36, 41. The side of the stop only contacts the side of the rubber gasket.

 For the reasons given above, the undisputed summary judgment evidence of probative value is that the landing gear assembly of the EC 120 helicopter cannot be found to infringe any claim of the '242 patent.[6] Plaintiff's backup argu-

---

6. The court does not consider that statements made by attorney Colin P. Cahoon in his declaration constitute probative summary judgment evidence on the subjects being discussed under this sub-subheading 2. *See* Br. in Opp'n, App. at 87–112. The court views the statements made in that declaration as being nothing other than a supplement by an attorney employed by plaintiff in this case to the attorney legal arguments made by plaintiff in its brief in opposition to the motion for summary judgment. Attorney legal argument cannot be converted into probative summary judgment evidence simply by moving it from a brief into a declaration by an attorney representing the party. Similarly, the court is not persuaded that the declaration of Daniel

ment that the doctrine of equivalents is expansive enough to cause defendants' landing gear assembly to infringe the '242 patent does not find support in the probative summary judgment evidence.

## C. *Conclusion*

For each of the alternative reasons discussed above, the court has concluded that plaintiff has failed to adduce summary judgment evidence raising a genuine issue of material fact that the helicopter landing gear assembly manufactured and sold by defendants infringed the '242 patent. There might well be merit to one or more of the other reasons given by defendants for a ruling of noninfringement, but there would be nothing to gain by a study and resolution of the competing contentions of the parties as to those other reasons inasmuch as the rulings the court has made on each of the first two reasons are dispositive.

## V.

### *Order*

Therefore,

The court ORDERS that defendants' motion for summary judgment be, and is hereby, granted, and that all claims made by plaintiff in count III be, and are hereby, dismissed.

---

P. Schrage, *see id.* at 114–121, is probative summary judgment evidence that raises any fact issue related to the subject discussed under sub-subheading 2. As the Federal Circuit has explained:

> [C]onclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court. Similarly, a court should discount any expert testimony that is

clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent.

*Phillips v. AWH Corp.,* 415 F.3d 1303, 1318 (Fed.Cir.2005) (quotation marks omitted) (quoting *Key Pharms. v. Hercon Labs. Corp.,* 161 F.3d 709, 716 (Fed.Cir.1998)).